My name is Anthony Chioso on behalf of Mrs. Chioso-Glass. Your Honor, this is an appeal from a ruling, a summary judgment motion. Counsel, could you put the mic up again? There. Thank you. Your Honors, we believe the District Court erred in granting the summary judgment motion based on the fact that they didn't engage in an analysis of proximate cause. The only issue that the District Court wrote about in its order was whether or not the entire loss arose from the sale of CMOs. It was properly pled in Mrs. Glass's opposition brief that there is actually another reason, another cause for her loss. And it's the initial inducement for her to even place her money with Brookstreet in the first place. Well, I guess I'm trying to figure out here, are you really going on the policy language argument or in our interpretation of the policy language argument, or are you making some other argument? I'm actually making some other argument, Your Honor. Is this an argument which would be somewhat similar to concurrent cause doctrine? There's two arguments of proximate cause that I'd like to address. One is concurrent cause, and the other is the efficient proximate cause argument. Okay. Let me ask you, where do you cite these arguments in your opening brief? Those two arguments are not cited in the opening brief, Your Honor. Well, then I guess we're done with them because you've waived them. I see. Also, Your Honor, I mean, I can't talk about an argument you don't make in the opening brief, or poor counsel can't respond. Well, Your Honor, the way it came up was after we evaluated. It's not a matter of the way it came up. The matter is, was it in the brief or wasn't it? I mean, to be fair, I looked at your brief, I read through it, I put everything down. I don't go talk to my law clerks about what's going on. I put down, I look at their brief, and I go through it, and then all of a sudden here comes a third brief that talks about something I've never, ever heard in the first two briefs. So then I look at the district court record. I don't think the old poor DJ knew about that argument either. And so then I'm saying to myself, how does he make that argument? Well, Your Honor, the district court didn't actually address the allegations made in the opposition brief, which was that in addition to her losses being a result of investment in the CMOs, she was also fraudulently induced as a separate cause of action, a negligent misrepresentation. Well, I looked at what you wrote to the district court, and I guess I'm still having a tough time understanding where you talked about these arguments before the court. I've even attached to my different argument or different ideas about what you told the district court, and I didn't see those arguments. Your Honor, if I may point you to our authorities, it's the appellant's excerpts of record. This is our opposition brief at page 129. The first full paragraph reads, Plaintiff's argument also failed because defendants were all passive participants in what Brooks described as a bond program that would purchase U.S. government-backed securities. Instead, defendants' accounts were aggressively Is that your best place? No, it's a little bit farther down. Well, I know. I've read the whole paragraph. In fact, I not only got it read, I got it underlined and circled. Okay. So I guess I'm just trying to figure out, is that your best place? As far as our opposition brief goes, it is, Your Honor. Going back to the issues raised in the opposition to our appeal, the language of arising out of is improperly applied to a situation like this. Their reference to the Fiber Board decisions actually all relate to cases where whether or not the insurer's claim was covered by a policy, not whether a particular exclusion applied. So in this case, Your Honor, the issue isn't whether or not the policy applies. There's no actual dispute in that. There was an arbitration award. All these various causes of action is properly fled, and it's also in plaintiff's own complaint. Mrs. Glass is here as a proper party to the insurance proceeds. The only issue is whether or not the exclusion applies. And the key language is the arising out of language, and that language has been determined by various courts, including Continental Casualty. We're saying that the arising out of language under California insurance law, it- We're still talking about those arguments you didn't make in your opening brief. Well, Your Honor, I'm simply replying to plaintiff's opposition, which- I say plaintiff's, but respondent's opposition, where they argue that arising out of is applicable, and I'm arguing that it is not applicable in this situation. Well, they didn't bring this appeal, did they? No, Your Honor. So if you were going to suggest an argument which was going to be applicable to their argument, and you were going to appeal it because the district court did it wrong, you really ought to put that in your opening brief, hadn't you? Not just come up with something when you get to your reply brief. I understand the court's position on that, Your Honor. I think that in this particular situation, what was before the district court were specific allegations that the- which have been addressed in our opening brief, which is that the district court didn't even address in its order the arguments that whether or not a- Mrs. Glass, her various other causes of action that led to her even being invested by Brook Street were applicable or not, and the judge simply glossed over that. Okay. Do you want to give any argument about the other claim that has been addressed in your opening brief  Your Honor, I'm- we're not arguing that whether or not CMOs are derivatives or not. I couldn't hear you. I'm sorry. Our position isn't to argue whether or not CMOs are derivatives or not. We're simply here to argue causation and whether or not the district court erred in not addressing the opposition arguments that state whether or not there is an actionable, triable issue of fact as to whether or not she was initially harmed by being induced and by the breach of fiduciary duty to allow someone who said, I know nothing about investing, I want to be put into something safe, to then be put into something that is extremely speculative, that she had no idea that she was being put into, also that was on margin. And so what followed was an arbitration claim which submitted and gave her an order stating that she had been harmed in those specific ways. And that is actually in the excerpts of record as well. Thank you, Counselor. We'll let you save the rest. And Judge Fletcher, I heard you start the question or maybe just clear your throat. Did you have a question? No, I don't have a question. All right. I guess I've got a lot of questions. May it please the court, my name is Joe Powers from the Sedgwick Firm and I'm here to represent Illinois Union. I'm sorry, I can't hear you, Counselor. I'm sorry, Your Honor. My name is Joe Powers from the Sedgwick Firm and I'm here to represent Illinois Union Insurance Company. Just to sort of briefly explain the posture of this case, I guess you could describe it as a coverage dispute within an action in the nature of interpleader in which the victim stands in the shoes of the party she is accused of wrongdoing and has obtained a judgment against. The name insured, Brook Street Securities, is insolvent. The appellee, Illinois Union, issued an errors and omissions insurance policy to Brook Street that had an aggregate limit of $3 million. The claims against Brook Street by its customers far exceeded those limits. So as a result, Illinois Union posted a bond for the $3 million, while at the same time it's making a claim for their return. The appellant now stands in the shoes of Brook Street in making her claim under the policy, and this is a very important consideration for the court to view when understanding how this policy is supposed to work. The appellant has a judgment against Brook Street for $300,000, which she is seeking to enforce in the interpleader action. The fact that she holds a judgment against Brook Street, however, does not mean that she is entitled to recover against Illinois Union. She must stand in the shoes of Brook Street and has no greater rights to recover than Brook Street does. The issue is not whether appellant is a sympathetic victim seeking to enforce a judgment against the E&O insurer for Brook Street. The real issue is whether Brook Street would be entitled to recover under the policy if it had paid the appellant's judgment and was in this courtroom today attempting to seek recovery under the policy. The policy that Illinois Union sold to Brook Street was, as I mentioned, a broker-dealer errors and omissions policy. Those types of policies generally protect broker-dealers against claims by customers for negligence in the furnishing of day-to-day routine services to their customers. They would include the execution of buy and sell orders and the providing of investment advice. Now, insurers of Brook Street and of broker-dealers in general, such as my client, understand that there are certain types of investment products that are inherently more volatile than blue-chip stocks and bonds, and those products, the more volatile ones, create greater risks that customers will lose money and will then turn around and sue the insured for their losses. Now, you'll find a list of some of the most volatile of those investment products right in the exclusion we are dealing with, commodities, commodity future contracts, and any type of option contract or derivative. Derivative products are excluded under this policy, and it's not just the market losses that the customer suffers that are excluded. It is, quote, loss on account of any claim made against any insured arising out of the sale, attempted sale, or servicing of any type of derivative. That is the operative language here. Now, I'll revisit those additional qualifications on the exclusion in a moment. Let me ask you a question, and I appreciate where you're going on this argument, but where do I find your analysis or, if you will, contrary argument as to Chioso's claim under California's Concurrent Cause Doctrine? Okay, well, as your Honor pointed out, that came up in the reply brief, so we have not had a chance to address that. Was that ever addressed prior to this? Not the Concurrent Cause Doctrine, no. Was it ever addressed in the district court? Never. The only thing that was addressed, there was an argument in the opening brief, and it may have been in some of the summary judgment papers, I can't recall, but the basic argument was that it was the inducement to purchase these securities that caused the loss as opposed to the collapse in the value of the securities. I will address that. Basically, that's inherently... Basically, what your argument is is that that is covered in the language of the policy. Exactly. Of the exclusion. Of the exclusion. That's a sale, an attempted sale. That inherently encompasses marketing activities. And then the representations that the market would turn around, that's part of servicing the account, giving the client investment advice. So everything is encompassed by that. And as your Honor knows, that arising out of language has been broadly interpreted in California. It goes well beyond proximate cause type analysis. I think the language is... Connected with. It requires... It links a factual situation with the event-creating liability and connotes only a minimal causal connection or incidental relationship. It comes right out of one of the cases. And the legal cause of action has no influence whatsoever on the analysis. Now, in terms of the concurrent cause, there is no concurrent cause. Well, as I understand it, Brook Street makes... Or excuse me, Kiyoso makes two arguments. First, that the Brook Street brokers misrepresented the nature of the program and breached their fiduciary duty. And secondly, that they then secretly invested the money and lost everything. So they have two claims, as I understand it. Well, again, you have to look at this from the perspective of Brook Street, as the name did short. They invested money 100% in CMOs. That is not contested here. Perhaps they didn't tell her that they were doing that, but that's what they did. And that's what is excluded here. And so the exclusion does apply to that. Well, my worry about that is under the concurrent cause doctrine, as I understand it in California. And I'll be fair. I'm just an Idaho lawyer, so I'm reading stuff that I don't usually face. But the concurrent cause doctrine in California would suggest that when two different risks concur in proximately causing the loss, the coverage would be upheld. If either risk is covered, notwithstanding the exclusion. Well, I would give you an example, just to throw out an example. If someone had hacked into the appellant's CMO account at Brook Street and stole some of those securities, yes, that would be the type of concurrent. But it has to be a completely independent cause. Because I looked at the cases after I saw the argument in the brief. And there's no independent cause here that doesn't fall within the breadth of the exclusion. Because it was 100% invested in CMOs, the market collapsed, and the value of those CMOs collapsed. There was nothing else that caused your loss. Well, I saw the general coverage under the policy, which would seem absolutely to cover both of these claims. And then I saw the exclusion, which would cover if you're going to meet the concurrent risk or cause doctrine, which would cover one of the claims. But the other claims may fall under the general overall policy coverage. Well, I'm not following you on that, Your Honor. Okay. Well, they made two claims, as I've already stated. You had a general overall in this policy, a general overall coverage for malfeasance. But then you took away by exclusion some of that. And all I'm saying is under the general coverage, I think you'd have coverage. But it's only with the exclusion that you don't have the coverage. And so I'm trying to compare it then. And that's all I was doing. And I'm not sure you even need to respond because we didn't get it. But I just wanted you to think about it because it is a worry to me. Okay. Well, if you don't have any further questions. No, I don't. Thank you. In our opening brief, we did argue but for causation argument. That's the person versus allied signal tech case on page 17 of our brief. The quotation there is that but for the circumstances of the fraud concealed, plaintiff's investment would not have lost its value. The issue there is just as it is here, without even regards to the other cases later cited, that had Mrs. Glass not initially been induced to purchase, not even to purchase, but just to place her money with Brook Street, just by their actual knowing negligent misrepresentations of what those products were and how they knowingly knew that they were not appropriate for an investor like her, she would have never placed that money with them if they had been honest with her and said this is actually what this particular vehicle is. It's strips and all these various mortgage-related investments that we now have heard so much about. But back when she invested in 2005 and 2006, no one had heard of them, let alone someone in her shoes. So had she not but for that actual inducement at the beginning, she would not have had any loss. Counsel, the fraud that you're speaking of, which caused her the loss? The fraud caused the loss. That's what you're claiming, isn't it? Well, there's actually several different causes of action that occurred. Well, one of them is fraud, right? One is fraud. What's the other one? The fraud is… What's the other one? Breach of fiduciary duty. All right. Negligent misrepresentation. Is that a third one? Yes. Okay, there's a third. Any others? Those are the three. Okay, well now the first one, the fraud. The fraud that they committed was in either concealing, fraudulently concealing, or fraudulently misrepresenting that they would be buying, let's say, government securities. But, in fact, the fraud was that they sold to her derivatives, right? That's the fraud cause of action. That's one element of the fraud cause of action. Okay, now the second one you said was negligent. What was the second one? Misrepresentation. Misrepresentation. Well, which is kind of the same as fraud, but let's take it as that. They misrepresented the kind of thing that they would purchase. They said, let's assume they said they purchased government contracts, government bonds. But, instead, they bought derivatives. That's the misrepresentation cause. The third one was negligence. What was the third cause of action of the concurrence? That would be the third one would be. All right, so all of the. . . Oh, excuse me, breach of fiduciary duty. All right, and then the breach, the fiduciary duty was to buy government or secure bonds. But they breached the fiduciary duty by buying derivatives. So all of these causes of action, which are concurrent, all end with the sale or attempted sale to your client of derivatives. And the policy excludes anything done by the broker involving the sale or the attempted sale of derivatives, whether it's done through fraud or misrepresentation or negligence or breach of fiduciary obligation. Any sale by the broker or attempted sale of derivatives is excluded. How do you get around that? Well, Your Honor, wrapped up in the breach of fiduciary duty claim is a knowing that Mrs. Glass is an unsophisticated investor who shouldn't be marketed anything other than what she said she wanted to get. And she was not going to ever be receiving what she asked for. Of course. And she got a judgment against the broker for that kind of conduct, too. Yes. Well, that's what your argument pertains to. You're talking about the liability of Broad Street. And they're clearly liable, and they were found liable. But the issue is not their conduct and their liability. The issue is whether what they did, which was to sell or attempt to sell derivatives, is conduct which is covered by the insurance company. And they expressly excluded any sales or attempted sales by Broad Street, they're insured, of derivatives. How do you get around that? Well, Your Honor, even if they never actually sold Mrs. Chioso Glass a single CMO, they committed a breach of fiduciary duty to her by her telling them that she wanted one thing and they even contemplating putting her in something else. Well, if they didn't do anything after they misrepresented, where would be her cause of action? She wouldn't even state a cause of action if there were no damages. Well, they would have breached the securities regulation. Okay, they breached. But if they didn't do anything, if they didn't sell anything or didn't buy anything, there would be a 12B6 for failure to state a cause of action, wouldn't there? No, there are no damages. Potentially, but she could have... There's also a claim here that by placing her money with Brook Street, she missed the opportunity to place her money somewhere else. So along those lines, had Brook Street made these claims to her and she even while just contemplating their acts, their sort of pitch to her of what she was going to get, she didn't invest her money somewhere else. And then all of a sudden, the entire CMO market fell out and she never actually invested with Brook Street. Potentially, she has a claim for Brook Street tying up her money just while she evaluated whether or not she was going to make an investment with them. Thank you, Counselor. Your time has expired. Thank you, Your Honors. Case 10-55060, Illinois Union Insurance v. Chioso Glass is hereby submitted. Mr. Castleman? Okay, you made it. I apologize. Just a minute, just a minute. We're going to take you up if you're here. We're going to take a five-minute recess before we do and then we will. Court is in recess for five minutes. You may be seated.
judges: Brewster, Fletcher B. , Smith N. R.